# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**ESTATE OF MILDRED S. JACKSON,**
**FLOYD G. ESTRIDGE, JR., Executor,**

      **Plaintiff,**

v.                      **CIVIL ACTION NO. 2:04CV34**
                                    **(Judge Keeley)**

**UNITED STATES OF AMERICA,**

      **Defendant.**

## POST-TRIAL MEMORANDUM OPINION & ORDER

This case involves a dispute over an estate's claimed tax deduction for a charitable gift allegedly made in circumvention of 26 U.S.C. § 2055(e). On June 1, 2005, the Court held a bench trial on the matter, and the parties filed post-trial memoranda on June 30, 2005. Pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, the Court now states its findings of fact and conclusions of law.[1] As discussed below, the Court concludes that the Estate of Mildred Jackson ("the Estate") is entitled to the contested charitable deduction because 26 U.S.C. § 2055(e) is inapplicable under the circumstances of this case.

### I. BACKGROUND

In April 1994, Mildred Jackson, the decedent, created a revocable inter vivos trust, naming Floyd G. Estridge, Jr. and

---

[1] The substance of any statement shall govern whether it is treated as a finding of fact or conclusion of law.

**ESTATE OF JACKSON v. US**  2:04CV34

**POST-TRIAL MEMORANDUM & ORDER**

Davis Trust Company ("Davis Trust") as co-trustees. James L. Schoonover drafted the trust agreement and represented Davis Trust. Estridge was also named executor of Jackson's estate.

Jackson received income and principal from the trust during her life. Upon her death, the trust became irrevocable, and provided that her nephew and three nieces each would receive $150,000 outright and one-fourth of the income from the balance of the assets held in trust. The trust named First United Methodist Church of Elkins ("First UMC" or "the church") as the remainder beneficiary, entitled to receive one-fourth of the trust corpus upon the death of each income beneficiary.

Trust investment decisions were made by the Trust Committee on behalf of Davis Trust.[2] The Trust Committee included two members of First UMC--Ralph Wilmoth and William J. Hartman. Wilmoth is also a member of First UMC's board of trustees, and Hartman served on First UMC's building committee. Moreover, co-trustee Schoonover was a member of First UMC.

Jackson died on November 28, 1999. Soon thereafter, Schoonover became concerned about potential conflicts of interest

---

[2] The trust instrument provided general guidance about investment strategy and required the trustees to consult each other when changes to the portfolio occurred during Jackson's life; however, the trust provided no such guidance after her death.

arising from the family beneficiaries' dissatisfaction with the diminished income from the trust and Estridge's marriage to Jackson's niece, who was one of those beneficiaries. To avoid possible disputes arising from such conflicts, Schoonover suggested that the trustees and beneficiaries terminate the trust.[3] Consequently, on June 9, 2000, the trustees, the family beneficiaries and First UMC signed an agreement terminating the trust ("Termination Agreement"). The income proceeds[4] of the trust were distributed to the family beneficiaries for fair market value based on life expectancy calculations derived from IRS actuarial tables. First UMC received the remaining $229,025.94.

The Estate filed its income tax return, Form 706, on August 28, 2000, claiming a charitable deduction for the contribution to First UMC. The IRS denied the deduction by letter dated August 2, 2001 and assessed additional taxes and interest. After paying the taxes and interest, the Estate appealed the assessment decision. The IRS denied the Estate's appeal on April 27, 2003.

---

[3] The interlocking relationships between Davis Trust and First UMC created other conflicts of interest. From the testimony at trial, however, it is unclear whether these conflicts prompted the trust termination.

[4] At the time of Jackson's death, the trust consisted of over $1 million in stocks, bonds and notes, and about $74,000 in farmland.

Consequently, the Estate filed this action on May 11, 2004, seeking to recover over $91,000, plus interest and other costs.

## II. ANALYSIS

Under 26 U.S.C. § 2055(a)(2), "all bequests, legacies, devises, or transfers" from an estate to a charitable or religious organization are tax deductible. Such a deduction is disallowed, however, if charitable and noncharitable remainder interests pass in the same property from the decedent,[5] unless the property is held in an annuity trust, a unitrust, or a pooled income fund. Id. § 2055(e)(2). A taxpayer may reform an otherwise nondeductible "split-interest charitable trust" by timely changing it into one of the three permissible forms. Id. § 2055(e)(3). Moreover, several courts have held that § 2055(e) does not apply when an intervening event destroys the charitable split-interest and causes a direct transfer of property to a charitable organization. See Flanagan v. United States, 810 F.2d 930, 935 (10th Cir. 1987); First Nat'l Bank of Fayetteville v. United States, 727 F.2d 741, 746 (8th Cir. 1984); Oetting v. United States, 712 F.2d 358, 361-63 (8th Cir. 1983); see also Estate of Strock v. United States, 655 F. Supp. 1334, 1340-41 (W.D. Penn. 1987).

---

[5] This creates a "charitable split-interest" trust.

In the case at bar, the parties agree that the trust created a split-interest remainder that did not conform with the requirements of § 2055(e)(2). They also agree that the trust was never reformed in accordance with § 2055(e)(3). Therefore, the critical question presented is whether the "split-interest exception" in § 2055(e)(2) applies to the money distributed to First UMC pursuant to the Trust Termination Agreement.

The Government maintains that § 2055(e) is <u>only</u> inapplicable where the nondeductible split-interest is terminated in a settlement of a will or to avoid an imminent breach of fiduciary duty. Such a narrow rule, however, is inconsistent with the statute's history and purpose. Congress enacted § 2055(e) in 1969 to curb the potential abuse of charitable deductions through split-interest bequests. <u>See generally</u> <u>Oetting</u>, 712 F.2d at 360-61. Before 1969, "where a bequest was made to . . . non-charitable beneficiaries for life or for a term of years, with an irrevocable remainder for the benefit of charity, an immediate substantial estate tax deduction often was available for the actuarial value of the remainder interest." <u>Strock</u>, 655 F. Supp. at 1336. Consequently, a non-charitable beneficiary (and an estate) could benefit "from a charitable deduction for a remainder or other interest that was significantly disproportionate to the actual

value ultimately received by the charity."[6] Flanagan, 810 F.2d at 935 (citations omitted). Therefore, "[t]he special requirements of § 2055(e) were meant to 'provide a better means of assuring that the amount received by the charity will accord with the charitable deduction allowed to the donor.'" First Nat'l Bank, 727 F.2d at 748 (quoting S. Rep. No. 91-552, 91st Cong., 1st Sess., reprinted in 1969 U.S. Code Cong. & Ad. News 2116, 2118).

To determine whether §2055(e) applies to a terminated charitable split-interest, courts routinely emphasize the distinct goal of the statute, i.e., to ensure that an estate's charitable deduction corresponds to the value received by the charity. See, e.g., Oetting, 712 F.2d at 363. Accordingly, when analyzing this issue, courts have generally focused on four factors: (1) whether property is directly transferred to the charitable beneficiary; (2) whether a noncharitable beneficiary maintains an interest in that property[7]; (3) whether the deduction is sought for the actual

---

[6] For example, a "trust corpus could be invested in high-income, high-risk assets so as to increase the value of the income interest but decrease the value of the charity's remainder interest." Oetting, 712 F.2d at 360-61.

[7] Under the plain language of the statute, this factor alone is arguably determinative of whether § 2055(e) applies. See First Nat'l Bank, 727 F.2d at 746 (holding that § 2055(e)(2) was inapplicable because "the non-charitable and charitable interests [were] not in the same property"); 26 U.S.C. § 2055(e)(2) (disallowing a tax deduction when charitable and noncharitable interests pass "in the same property")

**ESTATE OF JACKSON v. US**  2:04CV34

**POST-TRIAL MEMORANDUM & ORDER**

benefit received by the charitable entity; and (4) whether the estate is "concerned solely with gaining a charitable deduction by skirting the split-interest rules" of § 2055(e). Burdick v. Comm'r, 979 F.3d 1369, 1372 (9th Cir. 1992); see Flanagan, 810 F.2d at 934-35; First Nat'l Bank, 727 F.2d at 746-48; Strock, 655 F. Supp. at 1340. Moreover, as these decisions illustrate, the specific means employed to terminate the charitable split-interest is only relevant insofar as it demonstrates the motivation for termination. See Strock, 655 F. Supp. at 1340; see also Burdick, 979 F.2d at 1372 (adopting the rule of Strock). Therefore, the Court concludes that the Government's restrictive interpretation of § 2055(e) is not supported by the statute's legislative history or the relevant caselaw. As such, the Court will apply the principles articulated by Flanagan, First National Bank and Strock.

Turning to the facts of this case, First UMC received an outright distribution of money pursuant to the Termination Agreement. The family beneficiaries had no interest in this property at the time of distribution. Moreover, the deduction sought by the Estate equals the amount received by First UMC.

With respect to the motivation for terminating the trust, there is a dearth of evidence suggesting that either the trustees or the beneficiaries were aware of the requirements of § 2055(e)

before the execution of the Termination Agreement. Likewise, uncontradicted testimony establishes that the trustees and the beneficiaries did not terminate the trust in order to circumvent § 2055(e). Instead, the trustees believed in good faith that conflicts of interest threatened to compromise their ability to impartially administer the trust. The testimony of Bruce Stout, an expert on West Virginia trusts and estates law, confirms that the trust termination was advisable under the circumstances. Therefore, the Court concludes that the direct, indivisible and fixed distribution to First UMC renders § 2055(e) inapplicable, particularly in light of the good faith termination of the trust.

### III. CONCLUSION

The charitable deduction provisions of § 2055 are obviously intended "to encourage gifts to charity." Flanagan, 810 F.2d at 934 (citations omitted). Section 2055(e) reinforces that goal by preventing estates from claiming a charitable deduction for property that the charitable beneficiary does not receive. Such an abuse, however, did not occur here. Accordingly, for the above reasons, the Court **ORDERS** that the United States refund $91,011.67, plus interest, to the Estate of Mildred S. Jackson.

It is **SO ORDERED.**

**ESTATE OF JACKSON v. US**                                              2:04CV34

**POST-TRIAL MEMORANDUM & ORDER**

The Clerk is directed to transmit copies of this Order to counsel of record.

DATED: November __23__, 2005.

IRENE M. KEELEY<br>
UNITED STATES DISTRICT JUDGE